PEOPLE v HALL

Docket No. 85050. Argued November 8, 1989 (Calendar No. 11). Decided September 11, 1990.

Lisa Ann Hall was convicted in the Wayne Circuit Court, Charles S. Farmer, J., of conspiracy to deliver a controlled substance of 50 grams or more but less than 225 grams. The Court of Appeals, GILLIS, P.J., and DOCTOROFF and K. N. SANBORN, JJ., reversed in an unpublished opinion per curiam, holding that sufficient evidence had not been presented at the preliminary examination to support binding over the defendant for trial (Docket No. 100610). The people appeal.

In an opinion by Justice GRIFFIN, joined by Chief Justice RILEY and Justices BRICKLEY and BOYLE, the Supreme Court held:

Under a harmless error analysis, the evidentiary deficiency at the preliminary examination which permitted the binding over of the defendant for trial of felony charges on the basis of hearsay testimony is not ground for vacation of the subsequent conviction, where the defendant received a fair trial and was not otherwise prejudiced by the error.

1. The right to a preliminary examination is procedural, not substantial, and is based on statute, not the constitution. Under MCL 769.26; MSA 28.1096, where error occurs during preliminary examination involving improper admission of evidence, a subsequent verdict is not to be set aside unless on the record as a whole the error resulted in a miscarriage of justice. Automatic reversal of an otherwise valid conviction for an error which is harmless constitutes an inexcusable waste of judicial resources and contorts the preliminary examination screening process so as to protect the guilty rather than the innocent. The availability of interlocutory appeal affords protection in those cases where an innocent accused should have been screened out by the preliminary examination process.

2. The circumstances of this case do not support application of the automatic reversal rule. The decision of the Court of

REFERENCES

Am Jur 2d, Criminal Law § 428.

See the Index to Annotations under Hearsay; Preliminary Hearing.

Appeals must be reversed and the case remanded to the Court of Appeals for an analysis of whether the admission of hearsay evidence at the preliminary examination constituted harmless error, and, if so, for resolution of the other issues raised by the defendant.

Reversed and remanded.

Justice CAVANAGH, joined by Justices LEVIN and ARCHER, dissenting, stated that evidence sufficient to constitute probable cause must be shown at the preliminary examination. Evidence adduced at a subsequent trial cannot relieve the prosecution of this burden. In this case, the defendant was bound over solely on the basis of improperly admitted testimony by a conspirator.

CRIMINAL LAW — PRELIMINARY EXAMINATIONS — HEARSAY — HARM-LESS ERROR.

Under a harmless error analysis, an evidentiary deficiency at a preliminary examination which permits the binding over of the defendant for trial of felony charges on the basis of hearsay testimony is not a basis for vacation of a subsequent conviction, where the defendant receives a fair trial and is not otherwise prejudiced by the error (MRE 801[d][2][E], MCL 769.26; MSA 28.1096).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief, Criminal Division, Research, Training and Appeals, and *Thomas M. Chambers,* Assistant Prosecuting Attorney, for the people.

*Jonathan B.D. Simon* for the defendant.

GRIFFIN, J. Defendant was bound over for trial to face felony charges on the basis of hearsay testimony erroneously admitted at the preliminary examination. Although it appears that the ensuing trial was fair and error free, the Court of Appeals determined that this error compelled automatic reversal of defendant's conviction. We disagree. Concluding that a harmless error analysis is appli-

cable,[1] we hold that such an evidentiary deficiency at the preliminary examination is not ground for vacating a subsequent conviction where the defendant received a fair trial and was not otherwise prejudiced by the error.

I

Following a preliminary examination, defendant was bound over on charges of delivery and conspiracy to deliver cocaine upon the basis of hearsay statements made to police by two alleged coconspirators.[2] Defendant made timely objection to admission of the hearsay evidence. Subsequently, the coconspirators pleaded guilty and then testified at the trial of defendant, who was convicted of the conspiracy to deliver charge. On appeal, the prosecutor conceded that the hearsay statements at the preliminary examination were not admissible under MRE 801(d)(2)(E).[3] The Court of Appeals reversed the conviction on the authority of *People v Walker*, 385 Mich 565; 189 NW2d 234 (1971).[4]

In *Walker*, the defendant's car was stopped, and the car and his person were searched by police officers on the basis of a "tip" they received from an informant. The defendant was arrested and

---

[1] MCL 769.26; MSA 28.1096.

[2] MCL 333.7401(1), (2)(a)(iii), 750.157a; MSA 14.15(7401)(1), (2)(a)(iii), 28.354(1).

[3] MRE 801(d)(2) provides in pertinent part:

> A statement is not hearsay if . . . [t]he statement is offered against a party and is (A) his own statement . . . or (E) a statement by a coconspirator of a party during the course and in furtherance of the conspiracy on independent proof of the conspiracy.

[4] The Court of Appeals did not address the defendant's other allegations of error raised on appeal.

subsequently convicted of unlawful possession of narcotics. On appeal, the defendant complained that at the preliminary examination probable cause for the search and seizure of the defendant's person and automobile had not been established. Motions to quash the information, made by the defendant at the preliminary examination and again prior to trial, were denied. Subsequently, at a preliminary stage of the trial, testimony by a police officer clearly established that in fact there had been probable cause. Nevertheless, the *Walker* Court set aside the conviction, and stated:

> From both the Michigan and Federal cases, it is clear that while police officers may proceed upon the basis of information received from an informer and need not disclose the identity of the informer, in order to establish probable cause there must be a showing that the information was something more than a mere suspicion, a tip, or anonymous telephone call, and that it came from a source upon which the officers had a right to rely. This is the showing which should have been made at the preliminary examination in this case, but was not. Unless we require such a showing, the preliminary examination becomes meaningless, and a defendant is forced to stand trial in violation of a proper determination *from legally admissible evidence* at the preliminary examination stage that a crime has been committed and that there is probable cause to believe he is guilty of it. [*Id.*, pp 575-576. Emphasis in original. See also *People v White*, 276 Mich 29, 31; 267 NW 777 (1936); *People v Kennedy*, 384 Mich 339; 183 NW2d 297 (1971).]

In this appeal we are urged to reconsider *Walker* and to hold that error at the preliminary examination stage should be examined under a harmless error analysis. We agree and hold that the evidentiary error committed at the prelimi-

nary examination stage of this case does not require automatic reversal of the subsequent conviction absent a showing that defendant was prejudiced at trial.

II

Initially, it should be recognized that the preliminary examination is not a procedure that is constitutionally based. While it has been determined that a judicial determination of probable cause is a prerequisite to extended restraint of liberty following arrest, the federal constitution does not require that an adversary hearing, such as a preliminary examination, be held prior to prosecution by information. *Gerstein v Pugh,* 420 US 103; 95 S Ct 854; 43 L Ed 2d 54 (1975). "In Michigan, the preliminary examination is solely a creation of the Legislature—it is a statutory right."[5] *People v Johnson,* 427 Mich 98, 103; 398 NW2d 219 (1986) (opinion of BOYLE, J.). See also *People v Dunigan,* 409 Mich 765, 770; 298 NW2d 430 (1980); *People v Duncan,* 388 Mich 489, 495; 201 NW2d 629 (1972).

The Legislature, which created the preliminary examination procedure, has also mandated by statute that a conviction shall not be reversed where error is harmless:

> No judgment or verdict shall be set aside or reversed or a new trial be granted by any court of this state in any criminal case, on the ground of misdirection of the jury, *or the improper admission or rejection of evidence,* or for error as to any matter of pleading or procedure, unless in the opinion of the court, after an examination of the entire cause, it shall affirmatively appear that the error complained of has resulted in a miscarriage

---

[5] See MCL 766.1 *et seq.;* MSA 28.919 *et seq.*

of justice. [MCL 769.26; MSA 28.1096. Emphasis added.]

MCL 769.26; MSA 28.1096 parallels F R Crim P 52(a), which provides that "[a]ny error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." Although the United States Supreme Court has held that certain constitutional violations do require automatic reversal, see, e.g., *Gideon v Wainwright,* 372 US 335; 83 S Ct 792; 9 L Ed 2d 799 (1963) (denial of counsel at trial), "[I]t is the duty of a reviewing court to consider the trial record as a whole and to ignore errors that are harmless, including most constitutional violations . . . ." *United States v Hasting,* 461 US 499, 509; 103 S Ct 1974; 76 L Ed 2d 96 (1983). See also *People v Johnson, supra,* p 103, n 1.

Under the federal system, it is well established that a defendant's conviction will not be set aside even though only hearsay evidence was presented to the grand jury which indicted him, *Costello v United States,* 350 US 359, 362; 76 S Ct 406; 100 L Ed 397 (1956),[6] or for other evidentiary errors at the indictment stage, *Holt v United States,* 218 US 245, 247; 31 S Ct 2; 54 L Ed 1021 (1910). See also *United States v Blue,* 384 US 251; 86 S Ct 1416; 16 L Ed 2d 510 (1966) (the fact that the grand jury was presented with self-incriminating evidence obtained from the defendant in violation of the Fifth Amendment does not bar prosecution).

In its review of Florida court proceedings against a criminal defendant charged under Florida law, the United States Supreme Court made clear that while a defendant presently detained

[6] In Michigan hearsay evidence may be presented to a grand jury. Our Rules of Evidence do not apply to grand jury proceedings. MRE 1101(b)(2).

may challenge the probable cause for his confine-
ment, once he has been tried and convicted, there
is no requirement under the federal constitution
that the conviction be vacated because the defen-
dant was detained pending trial without a determi-
nation of probable cause. The *Gerstein* Court ex-
plained:

> In holding that the prosecutor's assessment of
> probable cause is not sufficient alone to justify
> restraint of liberty pending trial, we do not imply
> that the accused is entitled to judicial oversight or
> review of the decision to prosecute. Instead, we
> adhere to the Court's prior holding that a judicial
> hearing is not prerequisite to prosecution by infor-
> mation. *Beck v Washington,* 369 US 541, 545 [82 S
> Ct 955; 8 L Ed 2d 98] (1962); *Lem Woon v Oregon,*
> 229 US 586 [33 S Ct 783; 57 L Ed 1340] (1913). Nor
> do we retreat from the established rule that illegal
> arrest or detention does not void a subsequent
> conviction. *Frisbie v Collins,* 342 US 519 [72 S Ct
> 509; 96 L Ed 541] (1952); *Ker v Illinois,* 119 US 436
> [7 S Ct 225; 30 L Ed 421] (1886). Thus, as the Court
> of Appeals noted below, although a suspect who is
> presently detained may challenge the probable
> cause for that confinement, *a conviction will not
> be vacated on the ground that the defendant was
> detained pending trial without a determination of
> probable cause.* [*Pugh v Rainwater,* 483 F2d 778,
> 786-787 (CA 5, 1973).] [*Id.,* pp 118-119. Emphasis
> added.]

See also *Murphy v Beto,* 416 F2d 98 (CA 5, 1969);
*McCoy v Wainwright,* 396 F2d 818 (CA 5, 1968);
*Scarbrough v Dutton,* 393 F2d 6 (CA 5, 1968); cf.
*Hamilton v Alabama,* 368 US 52; 82 S Ct 157; 7 L
Ed 2d 114 (1961).

The Supreme Court has recognized the viability
of the harmless error principle even where funda-
mental constitutional rights of a defendant are
involved at the preliminary examination. In *Cole-*

*man v Alabama,* 399 US 1, 9; 90 S Ct 1999; 26 L Ed 2d 387 (1970), the Court held that because the preliminary hearing prior to indictment is a " 'critical stage' " in the course of prosecution under Alabama law, the Sixth Amendment right to counsel attaches. However, instead of reversing the defendant's conviction, after finding that the right to counsel had been unconstitutionally denied, the Court remanded the case to the state courts for a determination of whether denial of counsel at the preliminary hearing was harmless error.

More recently, the Supreme Court reaffirmed its commitment to the harmless error doctrine in a context that is close to this case. In *United States v Mechanik,* 475 US 66; 106 S Ct 938; 89 L Ed 2d 50 (1986), two government agents appeared together and testified in sequence before a federal grand jury in violation of F R Crim P 6(d), which states that only "the witness under examination" may be present. The United States Court of Appeals for the Fourth Circuit ruled that transgression of Rule 6(d) required automatic reversal of the defendant's subsequent conviction which came at the conclusion of a five-month jury trial. However, the Supreme Court reversed, and Chief Justice Rehnquist, writing for a majority, explained:

> The Rule [6(d)] protects against the danger that a defendant will be required to defend against a charge for which there is no probable cause to believe him guilty . . . [b]ut the petit jury's subsequent guilty verdict means not only that there was probable cause to believe that the defendants were guilty as charged, but also that they are in fact guilty as charged beyond a reasonable doubt. Measured by the petit jury's verdict, then, any error in the grand jury proceeding connected with the charging decision was harmless beyond a reasonable doubt.

It might be argued in some literal sense that because the Rule was designed to protect against an erroneous charging decision by the grand jury, the indictment should not be compared to the evidence produced by the Government at trial, but to the evidence produced before the grand jury. But even if this argument were accepted, there is no simple way after the verdict to restore the defendant to the position in which he would have been had the indictment been dismissed before trial. He will already have suffered whatever inconvenience, expense, and opprobrium that a proper indictment may have spared him. In courtroom proceedings as elsewhere, "the moving finger writes; and, having writ, moves on." [475 US 70-71. Emphasis deleted.]

The Court noted:

No long line of precedent requires the setting aside of a conviction based on a rule violation in the antecedent grand jury proceedings . . . . See, e.g., *Gerstein v Pugh,* 420 US 103, 119-123 (1975); *Coleman v Alabama,* 399 US 1, 10-11 (1970); *Chapman v California,* 386 US 18 [87 S Ct 824; 17 L Ed 2d 705] (1967). [*Id.,* p 71, n 1.]

Importantly, the Court found that the error in *Mechanik* was harmless when measured by a standard which requires a showing that the error prejudicially affected the outcome of the trial. *Id.,* p 72.

Subsequently, in *Bank of Nova Scotia v United States,* 487 US 250; 108 S Ct 2369; 101 L Ed 2d 228 (1988), the Supreme Court dealt with a trial court's authority to dismiss an indictment prior to trial on the basis of the cumulative effect of several acts of prosecutorial misconduct in the grand jury proceeding. By a vote of eight to one, the Court found the harmless error principle to be

applicable. Pointing to *Mechanik, supra,* the Court said:

> In *United States v Mechanik,* 475 US 66 (1986), we held that there is "no reason not to apply [Rule 52(a)] to 'errors, defects, irregularities, or variances,' occurring before a grand jury just as we have applied it to such error occurring in the criminal trial itself." *Id.* at 71-72. In *United States v Hasting,* 461 US 506, we held that "[s]upervisory power to reverse a conviction is not needed as a remedy when the error to which it is addressed is harmless since, by definition, the conviction would have been obtained notwithstanding the asserted error." We stated that deterrence is an inappropriate basis for reversal where "means more narrowly tailored to deter objectionable prosecutorial conduct are available." *Ibid.* We also recognized that where the error is harmless, concerns about the "integrity of the [judicial] process" will carry less weight, *ibid.,* and that a court may not disregard the doctrine of harmless error simply "in order to chastise what the court view[s] as prosecutorial overreaching." *Id.* at 507. Unlike the present cases, see *infra* at 258-259, *Hasting* involved constitutional error. *It would be inappropriate to devise a rule permitting federal courts to deal more sternly with nonconstitutional harmless errors than with constitutional errors that are likewise harmless.* [487 US 255-256.[7] Emphasis added.]

As *Mechanik* made clear, if the federal standard were to be applied in this case, the nonconstitu-

---

[7] In this preconviction setting, the standard for determining whether the error was harmless differed from that applied in *Mechanik:*

[D]ismissal of the indictment is appropriate only "if it is established that the violation substantially influenced the grand jury's decision to indict," or if there is "grave doubt" that the decision to indict was free from the substantial influence of such violations. *United States v Mechanik, supra* at 78 [O'Connor, J., concurring]. [487 US 256.]

tional error assigned by defendant would not be ground for reversal in the absence of a showing that the error prejudiced the outcome of his subsequent trial. *Id.,* p 72.[8]

State courts have also addressed the question before us and have concluded that errors in the preliminary examination proceedings do not require reversal per se on an appeal from a subsequent trial. For example, the California Supreme Court has held that reversal of a conviction is not required unless the defendant shows that he was deprived of a fair trial or otherwise suffered prejudice as a result of the error at the preliminary examination. *People v Pompa-Ortiz,* 27 Cal 3d 519;

---

[8] The applicability of this standard in the present context has been recognized by this Court, albeit in dicta. In *People v Johnson, supra,* the defendant argued that evidence of premeditation and deliberation at his preliminary examination was insufficient to justify binding the defendant over on an open charge of murder, thereby requiring reversal of his second-degree murder conviction. The *Johnson* Court (per BOYLE, J.) disagreed, finding that there was evidence from which the magistrate could have inferred premeditation and deliberation. In a footnote, Justice BOYLE discussed the issue of reversals for errors at preliminary examination:

> While the opinion for reversal bases its result upon an admittedly nonconstitutional error, *post,* pp 137-138, it errs in the standard it applies to determine whether the error is harmless. Certain constitutional violations require automatic reversal. See, e.g., *Gideon v Wainwright,* 372 US 335; 83 S Ct 792; 9 L Ed 2d 799 (1963) (denial of counsel at trial). Other constitutional violations are measured by the standard that requires a court to be convinced "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Chapman v California,* 386 US 18, 24; 87 S Ct 824; 17 L Ed 2d 705 (1967) (commenting on defendant's failure to testify at trial could be harmless error); *Rose v Clark,* 478 US [570]; 106 S Ct 3101; 92 L Ed 2d 460 (1986) (jury instruction shifting the burden of proof to the defendant can be harmless error). Nonconstitutional violations, such as that alleged in the instant case, are measured by a third standard in the federal system: The defendant must show a reasonable probability that the error affected the outcome of the trial. See *United States v Mechanik,* 475 US 66; 106 S Ct 938; 89 L Ed 2d 50 (1986) (no reversal for grand jury error unless the error affected the outcome of the trial). [427 Mich 115, n 14.]

612 P2d 941 (1980). In so holding, the *Pompa-Ortiz* court expressly overruled precedent (*People v Elliot,* 54 Cal 2d 498; 354 P2d 225 [1960]) in which it had earlier ruled that preliminary examination errors required reversal per se.[9] See also *People v Lofink,* 206 Cal App 3d 161, 169-170; 253 Cal Rptr 384 (1988); *People v Moore,* 185 Cal App 3d 1005, 1017-1018; 230 Cal Rptr 237 (1986); *People v Oyaas,* 173 Cal App 3d 663, 670-671; 219 Cal Rptr 243 (1985). The California Supreme Court, sitting en banc, has explained its *Pompa-Ortiz* rule by pointing to art VI, § 13, of the California Constitution which mandates that "a judgment shall not be set aside for error not resulting in a miscarriage of justice." *People v Crandell,* 46 Cal 3d 833, 856; 760 P2d 423 (1988). See also *People v Alcala,* 36 Cal 3d 604; 685 P2d 1126 (1984).

The issue at hand has also been addressed by the Colorado Supreme Court. In *People v Alexander,* 663 P2d 1024, 1025-1026, n 2 (Colo, 1983), it said:

> The defendant . . . argues that the trial court erred in finding probable cause at the preliminary hearing. Absent unusual circumstances not present here, however, any issue as to the presence of probable cause is rendered moot by the jury's guilty verdict.
> "Resolution of these questions must be made

---

[9] The *Elliot* case had held that where an accused is illegally bound over due to a material error at the preliminary hearing, the binding over is voidable, and, upon proper objection, the court has no jurisdiction to proceed. In overruling *Elliot,* the *Pompa-Ortiz* court rejected the prior cases' "uncritical use of the term 'jurisdiction' " and held that a trial court is not deprived of "jurisdiction" in the fundamental sense ("legal power to hear and determine a cause") in matters correctable by pretrial motions. 27 Cal 3d 528-529.

This Court likewise has held that the circuit court does not lose jurisdiction where a void or improper information is filed. See *People v Johnson, supra,* p 106, n 7.

prior to trial in order to avoid the anomalous situation where a defendant may be found guilty at trial, and then attempt to have the conviction reversed for a preliminary hearing on probable cause. The illogic of this anomaly is further exemplified by the observation of Judge McGowan, writing for the District of Columbia Circuit Court of Appeals, when he states:

" 'Where, as here, the accused has been found guilty of those charges in a full-scale trial that we have otherwise found to be free of error, the chances that he could persuade a magistrate that no probable cause exists for his continued detention are perhaps not ungenerously to be characterized as speculative. *Blue v United States* [119 US App DC 315] 342 F2d 894 (1964) [cert den 380 US 944; 85 S Ct 1029; 13 L Ed 2d 964 (1965)'].'' *Kuypers v District Court,* 188 Colo 332, 335; 534 P2d 1204, 1206 (1975).

Accord *People v Horrocks,* 190 Colo 501; 549 P2d 400 (1976). We consider the probable cause issue to be moot, and we accordingly do not discuss it further. [See also *Commonwealth v Troop,* 391 Pa Super 613; 571 A2d 1084 (1990); *State v West,* 223 Neb 241; 388 NW2d 823 (1986); *State v Navarrete,* 221 Neb 171; 376 NW2d 8 (1985); *State v Tomrdle,* 214 Neb 580; 335 NW2d 279 (1983); *State v Franklin,* 194 Neb 630; 234 NW2d 610 (1975); *State v Mitchell,* 104 Idaho 493; 660 P2d 1336 (1983), cert den 461 US 934 (1983); *Commonwealth v McCullough,* 501 Pa 423; 461 A2d 1229 (1983).]

We agree with the United States Supreme Court and with state courts which have held that automatic reversal is not warranted in the present circumstances. Like the California Constitution and F R Crim P 52(a), MCL 769.26; MSA 28.1096 clearly mandates that a conviction shall not be reversed for harmless error. Except for this Court's decision in *Walker,* we find no impediment

to the application of that principle in this case.[10] It is significant that the question of possible application of the harmless error standard was not decided or even discussed in *Walker.* If, and to the extent that, the *Walker* decision by this Court can be read as rejecting the applicability of the harmless error doctrine in circumstances such as are presented by this case, it is overruled.

In this appeal it is contended that a harmless error analysis would be inconsistent with recently adopted revisions of the Michigan Court Rules which were based upon recommendations by a committee appointed by this Court. Among its recommendations, the committee proposed MCR 6.107(G), which would have incorporated the harmless error principle into postconviction review of preliminary examination errors. The proposed rule read:

> Motions to Dismiss; Harmless Error on Appeal. If, on proper motion, the circuit court finds a violation of subrule (C), (D), (E), or (F), it shall either dismiss the information or remand the case to the district court for further proceedings. *Absent a showing of prejudice, a court may not reverse an otherwise valid conviction because of either a violation of these subrules or an error in failing to dismiss an information for violation of these subrules.* [422A Mich 28 (1985). Emphasis supplied.]

It is true that the rule as finally adopted and

[10] This Court has previously applied MCL 769.26; MSA 28.1096 in a number of contexts. See, e.g., *People v Straight,* 430 Mich 418; 424 NW2d 257 (1988); *People v Beach,* 429 Mich 450; 418 NW2d 861 (1988); *People v Crawford,* 429 Mich 151; 414 NW2d 360 (1987); *People v Blue,* 428 Mich 684; 411 NW2d 451 (1987); *People v Cash,* 419 Mich 230; 351 NW2d 822 (1984); *People v Woods,* 416 Mich 581; 331 NW2d 707 (1982), cert den 462 US 1134 (1983); *People v Weston,* 413 Mich 371; 319 NW2d 537 (1982); *People v Eady,* 409 Mich 356; 294 NW2d 202 (1980); *People v Richardson,* 409 Mich 126; 293 NW2d 332 (1980); *People v Wilkens,* 408 Mich 69; 288 NW2d 583 (1980).

renumbered by this Court, MCR 6.110(H), does not contain the words emphasized above. However, deletion of this language need not be read as a rejection by this Court of a harmless error analysis in the present situation. Rather, as staff comments which accompanied MCR 6.110(H) explain:

> Subrule (H) is consistent with current practice. This subrule does not address, and leaves to case law, what effect a violation of these rules or an error in ruling on a motion filed in the trial court may have when raised following conviction. [Mich Ct R, p R 6.1-9.]

In other words, as adopted, MCR 6.110(H) was designed merely to reflect the then-existing state of the law. Of course, the new rule could not, and was not intended to, preclude this Court from reëxamining the rule in *Walker.*

In our view, this Court can no longer ignore the applicability of MCL 769.26; MSA 28.1096 to facts such as those presented in this case. Since we consider ourselves bound by the legislation which established the preliminary examination procedure, it is reasonable and logical to also consider the Legislature's harmless error mandate which has direct application to the "admission or rejection of evidence." This case involves exactly such a situation.

Moreover, the instant case provides insight concerning the exacting toll of an automatic reversal rule. When the two coconspirators testified at defendant's trial, and thus were subject to cross-examination, the hearsay issue was mooted. The trial was rather lengthy for a bench trial,[11] and the error at the preliminary examination was unre-

[11] The trial commenced January 7, 1987, and defendant was found guilty on January 29, 1987.

lated to the issues which were the focus of the trial. To require automatic reversal of an otherwise valid conviction for an error which is harmless constitutes an inexcusable waste of judicial resources and contorts the preliminary examination screening process so as to protect the guilty rather than the innocent. As Chief Justice Rehnquist explained in *Mechanik, supra,* p 72:

The reversal of a conviction entails substantial social costs: it forces jurors, witnesses, courts, the prosecution, and the defendants to expend further time, energy, and other resources to repeat a trial that has already once taken place; victims may be asked to relive their disturbing experiences. See *Morris v Slappy,* 461 US 1, 14 [103 S Ct 1610; 75 L Ed 2d 610] (1983). The "[p]assage of time, erosion of memory, and dispersion of witnesses may render retrial difficult, even impossible." *Engle v Isaac,* 456 US 107, 127-128 [102 S Ct 1558; 71 L Ed 2d 783] (1982). Thus, while reversal "may, in theory, entitle the defendant only to retrial, in practice it may reward the accused with complete freedom from prosecution," *id.* at 128, and thereby "cost society the right to punish admitted offenders." *Id.* at 127. Even if a defendant is convicted in a second trial, the intervening delay may compromise society's "interest in the prompt administration of justice," *United States v Hasting, supra* at 509, and impede accomplishment of the objectives of deterrence and rehabilitation. These societal costs of reversal and retrial are an acceptable and often necessary consequence when an error in the first proceeding has deprived a defendant of a fair determination of the issue of guilt or innocence. But the balance of interest tips decidedly the other way when an error has had no effect on the outcome of the trial.[12]

---

[12] An automatic reversal rule would contradict MCR 6.002, which provides:

Otherwise stated,

> [Procedural rules] are not to be things to which
> individual litigants have claims in and of them-
> selves. Nothing is so subversive of the real pur-
> poses of legal procedure as individual vested rights
> in procedural errors . . . . [Pound, *The canons of
> procedural reform,* 12 ABA J 541, 543 (1926).]

Although we do not overlook the concerns ex-
pressed in the dissenting opinion, we believe the
availability of an interlocutory appeal affords pro-
tection in those cases where an innocent accused
should have been screened out by the preliminary
examination process.[13] Given the viability of that
remedy and the enormous price of reversing valid
convictions obtained pursuant to fair, error-free
trials, we cannot support application of the auto-
matic reversal rule under circumstances such as
those presented in this case.[14]

Accordingly, we reverse and remand this case to
the Court of Appeals for an analysis of whether

---

These rules are intended to promote a just determination of
every criminal proceeding. They are to be construed to secure
simplicity in procedure, fairness in administration, and the
elimination of unjustifiable expense and delay.

[13] The underlying assumption of the dissent's dismay at the result
of this opinion is that short of a reversal of an error-free trial, we
cannot depend on the magistrate who is bound to follow the rules of
evidence, the circuit or Recorder's Court judge who is bound to quash
a bindover where the rules of evidence are not followed, and the
Court of Appeals which is required to correct error of this nature to
maintain the applicability of the rules of evidence in preliminary
examinations.

We obviously do not share that skepticism.

[14] In his dissent in *People v Johnson, supra,* p 127, n 9, Justice
LEVIN wrote:

> Any other rule would deprive the accused of any remedy for
> a defect in the conduct of a preliminary examination. Mani-
> festly, the accused cannot be convicted unless sufficient evi-
> dence is adduced at the trial; if the sufficiency of the evidence
> at the trial cured an insufficiency at the preliminary examina-

the admission of hearsay evidence at the preliminary examination constituted harmless error and, if so, for resolution of the other issues raised by defendant in her appeal of right.

RILEY, C.J., and BRICKLEY and BOYLE, JJ., concurred with GRIFFIN, J.

CAVANAGH, J. (*dissenting*). Today, four members of this Court have whimsically and waywardly rendered purportless an historic, fundamental and perhaps, in the vast majority of criminal cases, the most significant stage in the criminal process. The clear message they today impart to police and prosecutors and the trial court judges of this state is this:

"Don't worry if the evidence introduced at the preliminary examination is legally inadmissible or even if it is insufficient to warrant a bindover. As long as there is sufficient evidence to convict at the time of trial, this Court will ignore any pretrial error."

Why do we find it necessary to abandon this time-honored statute and court-rule sanctioned procedure? It simply cannot be because our appellate courts are deluged with claims of preliminary examination errors. There are probably two good reasons why they are not. First, until today, police,

---

tion, there would be no remedy unless the circuit judge quashed the information or the Court of Appeals or this Court granted an interlocutory appeal from an adverse decision by the circuit judge. Interlocutory appeals are infrequently granted defendants in criminal cases, and, thus, if there is to be any review of the circuit judge's decision, it can occur only, in the ordinary case, after trial and conviction.

If a problem does exist because appellate courts do not grant applications of criminal defendants for interlocutory appeal in sufficient numbers or in appropriate cases, it is suggested that this Court could deal with the problem directly through the exercise of its supervisory authority, rather than by adhering to an arbitrary rule that automatically reverses otherwise valid convictions. For example, the rules of appellate procedure could be amended.

prosecutors, defense counsel and trial judges oper-
ated under the impression that the preliminary
examination was a very important step in the
criminal process at which sufficient legally admis-
sible evidence was required. So, as a result, they
got it right in the overwhelming number of cases.
Secondly, inasmuch as some ninety-two percent[1] of
our criminal cases result in a guilty plea, most
pretrial claims of error are waived. Therefore, the
occasion is rare indeed that we are confronted
with a confessed error as in this case.

Once it becomes established that the evidence
submitted at the trial cures any error or other
deficiency at the preliminary examination, circuit
and Recorder's Court judges considering a motion
to quash an information, asserting as a basis that
there was insufficiency in the evidence or other
deficiency, will be asked to ignore the same on the
representation and promise of the prosecutor that
the error or deficiency will be cured at the trial.
That is the next step in the slippery slope.

A motion to quash can then become almost a
waste of time. In some counties they may not even
pay the lawyers for filing them on the ground that
the only motion that the court should be asked to
consider is a motion for dismissal after the pros-
ecutor completes the proofs at the trial. What then
is the purpose; what is left of the preliminary
examination?

It will be interesting to see if today's majority
enthusiastically remands to our already overbur-
dened Court of Appeals all those routine denials of
interlocutory appeals from denials of motions to
quash. It will certainly require a change in our
usual treatment of such matters—a change neces-
sitated by today's majority's fear that a conviction

[1] *Criminal Justice in Crisis,* American Bar Association, Criminal
Justice Section, November, 1988.

of one improperly required to stand trial in the first instance, will be, on very rare occasion, reversed. I must dissent.

In this case, the prosecution admitted on appeal in the Court of Appeals that the hearsay statements related by the undercover officer at defendant's preliminary examination were improperly admitted into evidence.[2]

> Appellee must concede that the examining judge erroneously admitted into evidence at the preliminary examination the statements which Julia LeClair and Sandra Bell [codefendants] made [to the] officer . . . . [T]his is so because while there was evidence that Appellant had delivered the cocaine to Ms. LeClair, which Ms. LeClair subsequently delivered to [the] officer . . . there was no evidence presented which established that Appellant knew or understood that the cocaine she delivered to LeClair was to be distributed to a third party rather than used by LeClair for her own personal use.

Nonetheless, the prosecution urged the Court of Appeals to sustain defendant's conviction for conspiracy to deliver a controlled substance because there was sufficient evidence at trial to convict. The prosecution argued that *People v Johnson,* 427 Mich 98; 398 NW2d 219 (1986), reh den 428 Mich 1206 (1987), supported its contention; however, the Court disagreed:

> To the extent *Johnson* can be read in the manner suggested by the prosecution, it is dicta and we cannot say that the concurring opinion by then Chief Justice WILLIAMS provides the crucial vote in

_____

[2] Before this Court in oral argument, the prosecution also conceded that without the testimony of the undercover officer about Julia LeClair's statements, there would not have been enough evidence to connect defendant to the crime, or to even establish that a conspiracy had occurred.

support of that proposition. Hence, we will follow *People v Charles D Walker,* 385 Mich 565; 189 NW2d 234 (1971), and reverse defendant's conviction. [Unpublished opinion per curiam of the Court of Appeals, decided December 8, 1988 (Docket No. 100610).]

The Court of Appeals reversed the defendant's conviction, and we granted the prosecution's application for leave.

In *People v Walker, supra,* the defendant was convicted of unlawful possession or control of narcotics. Police officers, after receiving a "tip" from an informant, stopped the defendant's car and seized heroin from the car and incriminating drug paraphernalia from his person. At the preliminary examination, probable cause for the search and seizure was not shown. The defendant's motion to quash the information for lack of probable cause was nonetheless denied. At trial, the prosecutor conducted an examination of one of the police officers outside the presence of the jury. The defendant's attorney objected on the ground that probable cause must be shown first at the preliminary examination, not later at trial. The officer's testimony at trial clearly established probable cause.

The *Walker* Court noted the longstanding rule in this state that at the preliminary examination, the people are required to show that a crime has been committed and that there is probable cause to believe that the accused is guilty of having committed that crime. In the absence of such a showing, the accused cannot properly be bound over by the examining magistrate. See *People v Dellabonda,* 265 Mich 486; 251 NW 594 (1933); *People v Kennedy,* 384 Mich 339; 183 NW2d 297 (1971).

We stated in *Walker:*

In light of what was presented to the examining magistrate, it was clearly error to allow the narcotics into evidence to determine probable cause. Since probable cause for the arrest and search was not properly established at the preliminary examination, it begs the question to say that probable cause existed to believe that a crime had been committed. There can be no judicial determination of probable cause unless it is made at the proper stage of the proceedings. . . . Unless we require such a showing [to establish probable cause], the preliminary examination becomes meaningless, and a defendant is forced to stand trial in violation of a proper determination *from legally admissible evidence* at the preliminary examination stage that a crime has been committed and that there is probable cause to believe he is guilty of it. [*Id.* at 574-576. Emphasis in original.]

The Michigan Code of Criminal Procedure requires that a magistrate discharge a defendant if at the conclusion of the preliminary examination it appears that an offense has not been committed or there is not probable cause for charging the defendant with the crime. MCL 766.13; MSA 28.931. See also *People v Asta,* 337 Mich 590, 611; 60 NW2d 472 (1953):

[P]roofs on which to base the findings required by the statute must be introduced on a preliminary examination to justify binding over to circuit court for trial. In the case at bar the burden rested on the people to show by competent evidence, circumstantial or otherwise, that the crime of conspiracy as charged in the warrant had been committed, and that there was probable cause to believe defendants guilty thereof. ·

Thus, evidence sufficient to constitute probable cause must be shown at the preliminary examination. Evidence adduced at the subsequent trial

cannot relieve the prosecution of the burden of producing sufficient admissible evidence to establish probable cause at the preliminary examination.

This principle has been an integral part of Michigan law. In *People v White,* 276 Mich 29; 267 NW 777 (1936), the defendants were arraigned for larceny and conspiracy to commit larceny. Over the defendants' objection, the people introduced admissions by the defendants and a transcript of unsigned statements that were made earlier to the police. The defendants were held for trial following a denial of their motion to quash the information, and were found guilty of receiving stolen property. This Court reversed the convictions, stating:

> Aside from the confessions, there was not sufficient testimony in the examination to connect defendants with the offenses charged in the warrant. . . . The motion to quash should have been granted. . . . *The failure of the people to sustain their charge may be unfortunate, in view of the subsequent testimony at the trial, but it would be more unfortunate to upset established and well-understood rules of law.* [*Id.* at 31-32. Emphasis supplied.]

See also *People v Kennedy, supra.*

The requirement that sufficient evidence to bind a defendant over for trial must be presented at the preliminary examination has survived in Michigan for good reason. The preliminary examination has been held to be a *critical* step of the criminal process. *Coleman v Alabama,* 399 US 1, 9-10; 90 S Ct 1999; 26 L Ed 2d 387 (1970); *People v Bellanca,* 386 Mich 708, 712; 194 NW2d 863 (1972); *People v Duncan,* 388 Mich 489, 501-502; 201 NW2d 629 (1972). By statute, a felony information cannot be filed against any person until that person has

undergone or waived a proper preliminary examination. MCL 767.42; MSA 28.982.

As this Court stated in *People v Dochstader,* 274 Mich 238, 244; 264 NW 356 (1936):

> This binding conclusion and finding of the examining magistrate is a judicial determination, and constitutes the basis of the right of the prosecuting attorney to proceed in the circuit court by filing an information against defendant. Without such finding and determination by the examining magistrate, the prosecuting attorney is without jurisdiction to proceed in the circuit court by filing an information against defendant.

The prosecutor in this case maintains that, while there was insufficient admissible evidence at the preliminary examination to warrant the bindover of the defendant to the circuit court, there was sufficient evidence adduced at trial to sustain defendant's conviction. Therefore, we are urged to approach this case with hindsight and to subject the error to a harmless error analysis rather than reverse the conviction pursuant to MCR 6.110(H).

In 1989, this Court had an opportunity to adopt such a harmless error rule. The Criminal Rules Committee proposed MCR 6.107(G), which would have prohibited a court from reversing an otherwise valid conviction because of an evidentiary error, absent a showing of prejudice by the defendant.[3]

---

[3] This rule became effective October 1, 1989. The underlined portions were contained in the proposed rule version, but were *not* adopted by this Court:

> Motions to Dismiss; Harmless Error on Appeal. If, on proper motion, the ~~circuit~~ trial court finds a violation of subrule (C), (D), (E), or (F), it ~~shall~~ must either dismiss the information or remand the case to the district court for further proceedings. Absent a showing of prejudice, a court may not reverse an

This Court, however, rejected the proposed rule and instead adopted the present rule, MCR 6.110(H). This rule provides that upon a proper motion, a violation of various subrules at a preliminary examination requires the circuit court either to dismiss the information or remand the case to the district court.

Exemplifying the importance of adherence to proper preliminary examination procedures, this Court in *People v Weston,* 413 Mich 371; 319 NW2d 537 (1982), reversed the conviction of a defendant whose preliminary examination was held to be in violation of MCL 766.4; MSA 28.922.[4] There was no question that the date set for the defendant's preliminary examination was more than twelve days after the defendant appeared in district court. At the beginning of the preliminary examination, defense counsel challenged the holding of the examination on the basis of MCL 766.4; MSA 28.922. However, the defendant was bound

otherwise valid conviction because of either a violation of these subrules or an error in failing to dismiss an information for violation of these subrules.

In the case at bar, there was a violation of Rule 6.110(C), which provides:

Conduct of Examination. Each party may subpoena witnesses, offer proofs, and examine and cross-examine witnesses at the preliminary examination. Except as otherwise provided by law, the court must conduct the examination in accordance with the rules of evidence. A verbatim record must be made of the preliminary examination.

[4]  [T]he magistrate before whom any person is brought on a charge of having committed a felony shall set a day for a preliminary examination not exceeding 12 days thereafter, at which time a magistrate shall examine the complainant and the witnesses in support of the prosecution, on oath in the presence of the accused, in regard to the offense charged and in regard to any other matters connected with the charge which the magistrate considers pertinent.

over for trial and was subsequently found guilty of armed robbery. The Court of Appeals found that the error did not require reversal because the defendant did not suffer any prejudice because of the delay. This Court noted the strict limitation on any delay as provided by MCL 766.7; MSA 28.925. We rejected the Court of Appeals application of a "no prejudice/no reversible error" rule, despite its "repeated application." *Id.* at 375.

We stated in *Weston:*

A preliminary examination functions, in part, as a screening device to insure that there is a basis for holding a defendant to face a criminal charge. A defendant against whom there is insufficient evidence to proceed should be cleared and released as soon as possible. The notion that a presumptively innocent defendant should remain in custody until a convenient time arrives for the magistrate to conduct the preliminary examination is exactly what the Legislature precluded in MCL 766.1; MSA 28.919. [*Id.* at 376.]

The rule in *Weston* was later modified and upheld in *People v Crawford,* 429 Mich 151; 414 NW2d 360 (1987), reh den 429 Mich 1213 (1987).

Thus, it is clear to us that if a defendant is entitled to a prompt preliminary examination as mandated by statute, a fortiori a defendant is entitled to a preliminary examination where the substantive evidence presented is legally admissible. See *People v Kubasiak,* 98 Mich App 529, 536; 296 NW2d 298 (1980) ("[i]t is well-settled that an examining magistrate may consider only legally admissible evidence in reaching a decision to bind a defendant over for trial"); *People v Gwinn,* 47 Mich App 134, 139, 142; 209 NW2d 297 (1973).

At one point in its appeal, the people argued that this Court's decision in *People v Johnson,*

*supra,* supported the assertion that a conviction should only be reversed where there is error at the preliminary examination if the defendant shows prejudice as a result. The prosecution seized upon the language in a footnote in *Johnson* which addressed reversals for errors at preliminary examinations.[5] As stated by the Court of Appeals and as conceded by the prosecution at oral argument, that was a misreading of the *Johnson* decision since that language was dicta.

The prosecution cites a number of jurisdictions which have adopted a harmless error rule in preliminary examinations in cases involving matters of state law. Where there has been insufficient evidence at the preliminary hearing, some courts hold that a subsequent jury conviction either cures or renders moot those earlier deficiencies. *People v Alexander,* 663 P2d 1024 (Colo, 1983); *State v Franklin,* 194 Neb 630; 234 NW2d 610 (1975); *State v West,* 223 Neb 241; 388 NW2d 823 (1986). The prosecution relies heavily upon *People v Pompa-Ortiz,* 27 Cal 3d 519; 165 Cal Rptr 851; 612 P2d 941 (1980), in which the California Supreme Court determined that the defendant was denied a public preliminary hearing, yet nevertheless held that unless such denial prejudiced the defendant, his subsequent conviction at trial would not be reversed despite the error. I acknowledge that some other jurisdictions have developed different rules concerning the effect of error at preliminary examinations. However, I am not persuaded that these decisions mandate a change in our own state law. Some jurisdictions do have laws pertaining to preliminary examinations that are similar to Michigan's. For instance, in *Myers v Commonwealth,* 363 Mass 843, 849, n 6; 298 NE2d 819 (1973), the Massachusetts Supreme Court stated

_____
[5] 427 Mich 115, n 14.

that the rules of evidence should apply to preliminary examinations. ("Since the primary objective of the probable cause hearing is to screen out those cases where the legally admissible evidence of the defendant's guilt would be insufficient to warrant submission of the case to a jury if it had gone to trial, the rules of evidence at the preliminary hearing should in general be the same rules that are applicable at the criminal trial.") See also *State v Jacobson,* 106 Ariz 129, 130; 471 P2d 1021 (1970) (" 'The proof which will authorize a magistrate in holding an accused person for trial must consist of legal, competent evidence. No other type of evidence may be considered by the magistrate. The rules of evidence require the "production of legal evidence" and the exclusion of "whatever is not legal." ' " Citing *People v Schuber,* 71 Cal App 2d 773, 775; 163 P2d 498 [1945]); see also *Rogers v Superior Court of Alameda Co,* 46 Cal 2d 3, 8; 291 P2d 929 (1955); *Goldsmith v Sheriff of Lyon Co,* 85 Nev 295, 303; 454 P2d 86 (1969).

The people further contend that MCR 6.110(H) is contrary to MCL 769.26; MSA 28.1096, which provides:

> No judgment or verdict shall be set aside or reversed or a new trial be granted by any court of this state in any criminal case, on the ground of . . . the improper admission or rejection of evidence . . . unless in the opinion of the court, after an examination of the entire cause, it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice.

The prosecution argues that the automatic reversal rule conflicts with the statute because it does not require defendant to show prejudice or a "miscarriage of justice."

In *People v Weston, supra* at 376, this Court rejected that argument, stating:

> We are unable to apply this more general statute in the face of an unqualified statutory command that the examination be held within 12 days.
> A preliminary examination functions, in part, as a screening device to insure that there is a basis for holding a defendant to face a criminal charge. A defendant against whom there is insufficient evidence to proceed *should be cleared and released as soon as possible.* [Emphasis added.]

In affirming this principle in *People v Crawford, supra* at 159, n 12, we noted:

> The burden imposed on the prosecution, when the charges are dismissed without prejudice before the preliminary examination is held, is substantial and sufficient to encourage the magistrate timely to schedule and hold the preliminary examination or to establish a record with the requisite showing of good cause for delay required by the statute. The burden on the prosecution of dismissal without prejudice if the requisite showing is not made, while substantial, is not overwhelming. The charges can be refiled, the defendant rearrested, and a timely preliminary examination held.

Here, the same considerations are present. Despite the language of MCL 769.26; MSA 28.1096, there are unqualified statutory commands that a defendant only be bound over after a preliminary examination if there is probable cause, and if not, the defendant *shall* be discharged, MCL 766.13; MSA 28.931, and that a preliminary examination or a waiver thereof is a condition precedent to even the filing of a felony information, MCL 767.42; MSA 28.982.

In addition, our own rule of evidence, MRE 801(d)(2)(E), requires independent proof of the conspiracy before a statement of a coconspirator is allowed. This requirement was disregarded in the instant preliminary examination, and defendant was bound over solely on the basis of this improperly admitted evidence, rendering meaningless the significance of this preliminary examination. Michigan courts have held several times over that the Michigan Rules of Evidence apply to preliminary examinations. *People v Makela,* 147 Mich App 674; 383 NW2d 270 (1985); *People v Washington,* 84 Mich App 750; 270 NW2d 511 (1978); see also *People v Woodland Oil Co,* 153 Mich App 799; 396 NW2d 541 (1986).

In adopting the prosecutor's view that an error at preliminary examination could be cured by sufficient evidence at trial, the majority leaves a defendant no remedy, short of seeking a motion to quash the information, or then an interlocutory appeal, which is granted very infrequently. See *People v Johnson, supra* at 127, n 9 (LEVIN, J., dissenting). Additionally, I am persuaded that a harmless error requirement would undermine the accuracy of the screening process of the preliminary examination. The intended beneficiaries of this process are defendants who are innocent or against whom evidence is weak. These defendants will not appeal because at trial they generally are acquitted. Thus, as a practical matter, the only group of defendants who can be a "check" on the accuracy of the screening process are those against whom there is a strong case at trial. The harmless error rule would invariably apply to these defendants.

In affirming the principle of *Walker,* I do not propose that *any* error committed at a preliminary examination justifies automatic reversal after a

defendant's subsequent trial conviction. If at the preliminary examination there is sufficient legally admissible evidence in addition to that which should have been excluded, the decision to bind over the defendant can stand. See *People v Usher,* 121 Mich App 345, 349; 328 NW2d 628 (1982), and *People v Johnson, supra* at 116. However, where there is no other admissible evidence sufficient to bind over the defendant, I believe that such an improper bindover creates a travesty of justice and thwarts the purpose of the preliminary examination. We should not ignore the fact that

> [i]n modern criminal law pretrial procedure is for most defendants the only criminal procedure. . . . The core of pretrial procedure, in theoretical terms at the very least, is the preliminary hearing, at which police and prosecutorial discretion and the defendant's guilt are first subjected to judicial scrutiny.
>
> For this reason, if no other, the criminal justice system must pay close attention to the functioning of pretrial procedure to insure that it is providing the protections to which all accused persons are entitled.[6]

Thus, I would affirm the Court of Appeals reversal of defendant's conviction.

LEVIN and ARCHER, JJ., concurred with CAVANAGH, J.

---

[6] Note, *The function of the preliminary hearing in federal pretrial procedure,* 83 Yale L J 771, 805 (1974).