*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

LARRY DEVONTE HARRIS,

        Defendant-Appellant.

UNPUBLISHED
October 22, 2019

No. 344028
Kent Circuit Court
LC No. 17-010975-FH

Before: MARKEY, P.J., and BORRELLO and BOONSTRA, JJ.

PER CURIAM.

Following a jury trial, defendant was convicted of assault with a dangerous weapon (felonious assault), MCL 750.82, malicious interference with an electronic communication, MCL 750.540, and third-offense domestic assault, MCL 750.81(4). He was sentenced as a fourth-offense habitual offender, MCL 769.12, to 4 to 15 years' imprisonment for the felonious assault conviction, 2 to 15 years' imprisonment for the communication-interference conviction, and 12 to 70 years' imprisonment for the domestic assault conviction. Defendant appeals by right, and we affirm.

This case stems from a violent domestic assault committed by defendant against the mother of his child. The victim testified that defendant had an argument with his girlfriend and that he called the victim, asking her to pick him up. The victim picked up defendant, and the two drove back to her place. The victim testified that defendant spent the night at her home, with defendant staying in a room with their son. The victim slept separately in her own room. After she awoke the next day, the victim discovered money missing from her wallet and confronted defendant. According to the victim, an argument ensued and quickly escalated with defendant's becoming violent. Along with yelling at and threatening the victim, defendant threw, kicked, choked, spit on, and punched her repeatedly in different areas of the home over a prolonged period. He then put a knife to the victim's neck and threatened to kill her. The victim testified that the assault was committed in front of their young child and that defendant was high on cocaine. The victim attempted to call the police using her cell phone, but defendant grabbed the phone and threw it to the ground, smashing the phone. The victim, whose face, head, and body

-1-

were bruised and bloodied, was finally able to escape her home and call the police using a neighbor's phone. The court admitted into evidence photographs of the victim's injuries, the smashed phone, the knife, and a bathroom door damaged when defendant thrust the knife into it several times while the victim and child cowered inside.

Throughout the proceedings, including the preliminary examination and trial, defendant conducted himself in a disorderly, disruptive, and disrespectful manner. Defendant often interrupted as the prosecutor was eliciting testimony, fought and argued with the trial court, and spoke very loudly when conferring with counsel such that the entire courtroom could hear. The trial court repeatedly admonished defendant, asking him to be respectful and quiet and warning defendant that he would be removed from the courtroom if he continued acting in an unruly fashion. The court was eventually forced to remove defendant from the courtroom during the trial because he ignored the court's repeated admonitions to behave appropriately. Although in lockup, defendant was able to listen to the remainder of the trial and communicate in writing with his counsel.

The minimum sentence guidelines range for defendant was 22 to 76 months (domestic assault). The trial court imposed a minimum sentence of 12 years for the domestic assault conviction, nearly doubling the top end of the guidelines range. At the sentencing hearing, the trial court noted that there had been an attempt to sentence defendant a week earlier, but "defendant start[ed] ranting and raving, screaming, yelling, [and] was moved out [of] the courtroom." The court indicated that defendant continued to disrupt the sentencing "even when he was in lockup and had to be removed off the floor." The trial court observed that defendant's record was "absolutely atrocious," revealing eight prior felony convictions, 20 misdemeanor convictions, six juvenile adjudications, 16 different jail sentences, probation and prison stints, and various parole violations. The court then stated:

> This was a very long, involved attack on this woman and her child. This is a woman that you had a child with that was, quite frankly, allowing you to be a father figure and wanted you to be a father figure to this child. You stole from her, you abused her, you threatened her, you beat her. This started out downstairs in the apartment. It went on for a long period of time, and then it graduated upstairs where this poor woman and her child were trying to hide in the bathroom. You took a knife, you were stabbing the door trying to—threatening to kill her and this little boy. That is outrageous. You said, as I recall—the quote was during the course of trial that you were going to ["]O. J. them.["] In other words, kill them both. This was a very serious attack. There was a mirror that was broken. Luckily this woman survived, and this child survived.

The trial court then acknowledged that the guidelines were only advisory and that it had to impose a sentence that was reasonable and proportionate. The court ruled:

> [T]hese guidelines do not take into [account] the significance of this attack, the fact that you went after both this woman and this child with a knife over an extended period of time. It does not take into [account] your extensive criminal record that I have already articulated on the record, nor does it take into [account] . . . that you just cannot control yourself. You could not control yourself

in the courtroom during the course of trial. You could not control yourself at sentencing. I have been doing this for 33 years. I've been on the bench for 12 years. You are one of the most dangerous individuals that I have ever had come before me or that I have ever seen or worked with. There is no question in my mind that you are a threat to society, and you need, quite frankly, to be housed away and need counseling, and you need to be able to reflect on the way you've been living your life and what you have been doing.

On appeal, defendant first argues that the trial court erred by removing him from the courtroom during which time critical portions of the trial were conducted, including the testimony of witnesses, closing arguments, and final jury instructions. This issue was not preserved below; therefore, our review is for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

Under MCL 768.3, a criminal defendant has a statutory right to be present during his or her trial. *People v Kammeraad*, 307 Mich App 98, 116; 858 NW2d 490 (2014). The right of an accused to be present at trial is also impliedly guaranteed by the state and federal Confrontation Clauses, US Const, Am VI; Const 1963, art 1, § 20, the Due Process Clauses, US Const, Am XIV; Const 1963, art 1, § 17, and the right to an impartial jury, Const 1963, art 1, § 20. *People v Mallory*, 421 Mich 229, 246 n 10; 365 NW2d 673 (1984); *Kammeraad*, 307 Mich App at 116-117. A defendant, however, can forfeit or waive his right to be present at trial by voluntarily being absent after the trial has started, which was not the case here, or by being so disorderly and disruptive that the trial simply cannot be continued with the defendant being present. *Kammeraad*, 307 Mich App at 117. Although a court must indulge every reasonable presumption against the loss of the constitutional right to be present in the courtroom, "a defendant can lose his right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom." *Illinois v Allen*, 397 US 337, 343; 90 S Ct 1057; 25 L Ed 2d 353 (1970); see also *Kammeraad*, 307 Mich App at 118. The proper administration of justice requires that dignity, order, and decorum be the hallmarks of all court proceedings, and the flagrant disregard in the courtroom of these basic tenets of appropriate conduct is not to be tolerated. *Kammeraad*, 307 Mich App at 119. Trial courts confronted with disruptive, contumacious, and stubbornly defiant defendants have the discretion to meet the circumstances by removing such defendants from the courtroom. *Id.*

An examination of the record in the instant case reveals a course of conduct by defendant before, during, and after trial that was unruly, disruptive, disrespectful, disorderly, and offensive. Defendant's conduct made it impossible to carry on the trial with any semblance of order were he to remain present in the courtroom. The trial court repeatedly warned defendant of the consequences of his actions, continually asked him to behave respectfully, and even gave him the opportunity after ordering him removed from the courtroom to reclaim the right to be present on condition that he conduct himself in a proper manner. Defendant chose to forfeit his "second" chance: he chose to maintain his rebellious attitude despite having promised that he understood and would "behave". The trial court ultimately deemed it necessary to remove defendant from the courtroom so that the trial could continue in orderly fashion. Although defendant was placed

in lockup, he was still able to hear the trial and to effectively communicate with defense counsel through the passing of notes. We hold that the trial court did not err by removing defendant from the courtroom during the trial in light of his belligerent behavior. See *People v Harris*, 80 Mich App 228, 230; 263 NW2d 40 (1977). There was no error, plain or otherwise.

Next, defendant argues that the trial court abused its discretion by imposing a sentence that departed upward from the guidelines range by nearly double the range's top end. Defendant contends that the departure was unreasonable and disproportionate.

We review for reasonableness "[a] sentence that departs from the applicable guidelines range." *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). In *People v Steanhouse*, 500 Mich 453, 459-460; 902 NW2d 327 (2017), our Supreme Court provided elaboration on the "reasonableness" standard, stating:

> [T]he proper inquiry when reviewing a sentence for reasonableness is whether the trial court abused its discretion by violating the "principle of proportionality" set forth in *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990), "which requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender."

Factual findings related to a departure must be supported by a preponderance of the evidence and are reviewed for clear error. *People v Lawhorn*, 320 Mich App 194, 208-209; 907 NW2d 832 (2017). For purposes of sentencing, "a court may consider all record evidence, including the contents of a PSIR,[1] plea admissions, and testimony presented at a preliminary examination." *People v McChester*, 310 Mich App 354, 358; 873 NW2d 646 (2015).

The key test is not whether a sentence departs from or adheres to the guidelines range, but whether the sentence is proportionate to the seriousness of the matter. *Steanhouse*, 500 Mich at 472. "The premise of our system of criminal justice is that, everything else being equal, the more egregious the offense, and the more recidivist the criminal, the greater the punishment." *People v Babcock*, 469 Mich 247, 263; 666 NW2d 231 (2003). Sentencing judges are "entitled to depart from the guidelines if the recommended ranges are considered an inadequate reflection of the proportional seriousness of the matter at hand." *Milbourn*, 435 Mich at 661. A sentence within the guidelines might be disproportionality lenient. *Id.* "Where a defendant's actions are so egregious that standard guidelines scoring methods simply fail to reflect their severity, an upward departure from the guidelines range may be warranted." *People v Granderson*, 212 Mich App 673, 680; 538 NW2d 471 (1995). In *People v Steanhouse*, 313 Mich App 1, 46; 880 NW2d 297 (2015), aff'd in part, rev'd in part on other grounds 500 Mich 453 (2017), this Court indicated:

> Factors previously considered by Michigan courts under the proportionality standard included, among others, (1) the seriousness of the offense; (2) factors that were inadequately considered by the guidelines; and (3)

---

[1] PSIR stands for presentence investigation report.

factors not considered by the guidelines, such as the relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation. [Citations omitted.]

"[A] trial court must justify the sentence imposed in order to facilitate appellate review, which includes an explanation of why the sentence imposed is more proportionate to the offense and the offender than a different sentence would have been." *People v Dixon-Bey*, 321 Mich App 490, 525; 909 NW2d 458 (2017) (quotation marks and citations omitted).

We first agree with the trial court's conclusion that the prior record variables (PRVs) were woefully inadequate with respect to addressing defendant's extensive criminal history. Under PRV 1, defendant was assessed 50 points for two prior high severity felony convictions. MCL 777.51(1)(b). Under PRV 2, defendant was assessed 30 points for four or more prior low severity felony convictions. MCL 777.52(1)(a). Accordingly, two of defendant's eight prior felony convictions had no bearing on his PRV score and were given no weight. Under PRV 5, defendant was assessed 20 points for seven or more prior misdemeanor convictions or prior misdemeanor juvenile adjudications. MCL 777.55(1)(a). But 13 of defendant's 20 prior misdemeanor convictions had no bearing on his PRV score and were given no weight. Between defendant's prior misdemeanor and felony convictions, 15 crimes that defendant committed were effectively unrecognized in scoring the PRVs; consequently, we agree that the trial court appropriately took into consideration the inadequacy of the guidelines relative to defendant's criminal background. The PSIR also supported the trial court's reliance on the fact that defendant had several parole and probation violations on his record.

With respect to the trial court's reference to the prolonged, vicious nature of the assault, while various characteristics of the assault and impact on the victim were taken into consideration in scoring the offense variables (OVs), there are no OVs that particularly address the longevity or duration of an assault. Also, to the extent that the OVs somewhat take into consideration the horrific nature of a crime, we question the adequacy of the OVs in addressing this particular situation in which the drug-crazed defendant attempted to break through the door of a bathroom wherein the victim and child sought shelter: defendant rammed the door with a knife and threatened to kill the victim—patently a terrifying experience for both the victim and the child. We agree with the trial court's sentiments that defendant's conduct was "outrageous." One should also not lose sight of the fact that a young child was present throughout the long brutal assault on his mother.

Finally, the trial court noted defendant's disorderly, disruptive, and disrespectful behavior during court proceedings. The court tied this conduct, along with defendant's criminal history, to its conclusion that a substantial prison term was necessary for the protection of society, as defendant was a very dangerous individual in great need of counseling. As indicated earlier, a defendant's misconduct while in custody and the potential for rehabilitation can be considered in departing from the guidelines. *Steanhouse*, 313 Mich App at 46. The courtroom misconduct defendant purposely and repeatedly displayed, although not in a prison setting, nevertheless constituted misconduct while in custody. And the potential for rehabilitation relates to the protection of society—the poorer the chance of rehabilitation, the greater the need for a lengthy

prison term to protect society. The trial court appropriately considered these factors in departing from the guidelines range.

Taking into consideration defendant's extensive criminal history, the prolonged and horrific nature of the assault, defendant's misconduct during court proceedings, and the need to protect society, we find that the decision to depart from the guidelines and the extent of the departure were reasonable, i.e., the 12-year minimum sentence was proportionate to the circumstances surrounding the offense and the offender. The trial court effectively determined that a sentence within the guidelines would not be proportionate to the offense and the offender in light of the aggravating circumstances. In sum, we hold that the trial court did not abuse its discretion by imposing the departure sentence.

Next, in his Standard 4 brief, defendant argues that the district court erred in binding defendant over for trial following the preliminary examination, considering that there was an absence of probable cause to conclude that defendant committed a crime. This argument is greatly lacking in merit. Defendant presents nonsensical arguments unsupported by law and/or the facts contained in the record. At the preliminary examination, the victim testified to the assault committed against her by defendant, and the district court admitted into evidence photographs of the battered victim, the bathroom door, the knife, and the smashed cell phone. There was probable cause to find that the charged offenses had been committed and that defendant had committed them.[2] Although defendant presented the testimony of his girlfriend who attempted to provide him with an alibi, a magistrate should not refuse to bind a defendant over for trial simply because there is conflicting evidence. *People v Yost*, 468 Mich 122, 128; 659 NW2d 604 (2003). Furthermore, the district court expressly found that the victim was much more credible than defendant's girlfriend. See *id*. (a magistrate has the authority to assess the credibility of witnesses in a preliminary examination). Finally, "an evidentiary deficiency at the preliminary examination is not ground for vacating a subsequent conviction where the defendant received a fair trial and was not otherwise prejudiced by the error." *People v Hall*, 435 Mich 599, 601; 460 NW2d 520 (1990). Here, defendant received a fair trial and was not prejudiced by any assumed evidentiary deficiency at the preliminary examination.

Lastly, defendant presents various frivolous claims of ineffective assistance of counsel that are not supported by the law and/or the facts contained in the record. We also deem the issues abandoned due to inadequate and incoherent briefing. See *People v Matuszak*, 263 Mich App 42, 59; 687 NW2d 342 (2004). Defendant has not persuaded us that trial counsel's

---

[2] The purpose of a preliminary examination is to determine whether there is probable cause to believe both that an offense has been committed and that it was committed by the defendant. MCL 766.13; MCR 6.110(E). Probable cause is established by evidence "sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief" that a crime was committed and committed by the defendant. *People v Yost*, 468 Mich 122, 126; 659 NW2d 604 (2003) (quotations and citation omitted). The prosecutor must present evidence showing each element of the crime charged or evidence from which the elements can be inferred, although the evidence need not establish guilt beyond a reasonable doubt. *People v McBride*, 204 Mich App 678, 681; 516 NW2d 148 (1994).

performance was deficient or that, assuming deficient performance, defendant suffered any prejudice. *People v Carbin*, 463 Mich 590, 599-600; 623 NW2d 884 (2001). Reversal is unwarranted.

We affirm.


/s/ Jane E. Markey
/s/ Stephen L. Borrello